**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**

------------------------------------------------------
In re:                                ) Chapter 13
                                      )
BARRY E. YOUNG,                       ) Case No. 06-31203 (ASD)
                                      )
        Debtor.                       ) Re: Doc. I.D. Nos. 18, 23
------------------------------------------------------

**MEMORANDUM OF DECISION ON OBJECTION TO**
**CONFIRMATION OF DEBTOR'S CHAPTER 13 PLAN**

ALBERT S. DABROWSKI, Chief United States Bankruptcy Judge.

**I. INTRODUCTION**

The Debtor's Chapter 13 Plan is before the Court for consideration of confirmation. That plan (hereafter, the "Debtor's Plan") has been met with a strenuous objection by a party-in-interest, the City of Waterbury, Connecticut (hereafter, the "City"). Because the Debtor's Plan attempts, impermissibly, to treat a claim not actually held by the City, the Court will deny confirmation of the same.

**II. JURISDICTION**

The United States District Court for the District of Connecticut has jurisdiction over the instant matter by virtue of 28 U.S.C. § 1334(b). This Court derives its authority to hear and determine this matter on reference from the District Court pursuant to 28 U.S.C. §§ 157(a), (b)(1) and the District Court's General Order of Reference dated September 21, 1984. This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(L).

**III. FACTUAL BACKGROUND**

The relevant factual background of this contested matter, in enumerated form below, is not in dispute.

1.      Prior to the commencement of this bankruptcy case the Debtor accrued a substantial real property tax obligation to the City in connection with his ownership of a certain three-family home known as and numbered 14-16 Ward Street, Waterbury, Connecticut (hereafter, the "Ward Property").

2.      On or about January 26, 2006, the City's Tax Collector (hereafter, the "Collector") conducted a sale of the Ward Property pursuant to Connecticut General Statutes (hereafter, "C.G.S.") §§ 12-155, et seq. (hereafter, the "Tax Sale").  At the time of the Tax Sale the successful bidder (hereafter, the "Buyer") tendered the sum of $19,780.17 (hereafter, the "Delinquent Real Estate Taxes") to the Collector.

3.      In connection with the Tax Sale, the Debtor was provided by law, see C.G.S. § 12-157(f), with a six-month "redemption" period with respect to the Ward Property, the final day of which period was July 26, 2006.

4.      On April 12, 2006, the Superior Court of Connecticut, Judicial District of Waterbury, denied the Debtor's request to declare the Tax Sale null and void and issue a one-year injunction against the sale "so that some accommodation for payment of the taxes [could] be made with the City."  Young v. City of Waterbury, 2006 WL 1149205 (Conn.Super. 2006).

5.      The Debtor commenced this Chapter 13 case on July 26, 2006 (hereafter, the "Petition Date") through the filing of a petition under Bankruptcy Code Section 301.

6.      In his Bankruptcy Schedule "A" – *Real Property* – the Debtor claimed to hold a Petition Date "fee simple" interest in the Ward Property, and scheduled that purported interest at a value of $60,000.00.  On Bankruptcy Schedule "C" – *Property Claimed as Exempt* – the Debtor claimed a $75,000.00 Connecticut homestead exemption in the Ward

Property despite the fact that the Debtor did not reside in the Ward Property on the Petition Date.[1]

7. In his Bankruptcy Schedule "D" – *Creditors Holding Secured Claims* – the Debtor lists the Collector as a creditor holding a claim in the amount of $25,007.00 secured by an non-described asset with a value of $60,000.00 (hereafter, the "Putative Secured Claim").[2]

8. The Debtor did not schedule the City as an unsecured creditor.

9. The City has filed four proofs of claim in this case, all apparently for delinquent motor vehicle taxes.[3]

10. The Debtor's Plan (Doc. I.D. No. 18), filed August 8, 2006, treats the City as a secured creditor and proposes, *inter alia*, to pay "dividends" to the Collector totaling $25,007.00, plus 18% interest, in connection with a "Real estate Tax lien" claim.

11. The City filed a timely *Objection to Confirmation of Chapter 13 Plan* (Doc. I.D. No. 23) (hereafter, the "Objection"). The Objection asserts, *inter alia*, that the Plan is not confirmable based upon two interrelated propositions: (i) that the Debtor holds no "ownership interest in and to" the Ward Property; and (ii) that the Debtor does not presently owe the City any amount for real estate tax obligations.

---

[1] The Debtor's Petition listed his residential address as 1660 East Main Street, Waterbury, Connecticut.

[2] Presumably the collateral referred to by the Debtor is the Ward Property.

[3] These proofs of claim were docketed as Claim Nos. 6, 7, 9 and 10. Claim Nos. 6 and 7 are unsecured nonpriority claims for motor vehicle taxes from the Grand List of 1998, in the amounts of $276.00 (Account # 98-3-56723) and $577.57 (Account # 98-3-56724), respectively. Claim No. 9 was withdrawn by the City as duplicative of Claim Nos. 6 and 7 (*see* Doc. I.D. No. 25). Claim No. 10 is stated as a secured claim in the amount of $1.00, bearing the same Account #s as Claim Nos. 6 and 7, and references un-described "Real Estate" collateral with a stated value of $20,000.00.

## IV. DISCUSSION

The ultimate question presented by the Objection is whether a Connecticut bankruptcy debtor may effectuate a post-municipal tax sale redemption of real property through treatment of the original tax obligation as a secured claim in a Chapter 13 plan. For the reasons that follow, this Court concludes that the relief sought by the Debtor through his Chapter 13 plan is impermissible.

By its terms, the Debtor's Plan proposes to pay over time the Putative Secured Claim, plus 18% interest, through monetary distribution(s) from the Chapter 13 Trustee to the City. Yet if the City no longer holds a secured claim against the Debtor, then his attempted treatment of such a claim in his plan is impermissible and technically fatal to confirmation. Central to a resolution of that fundamental question, as well as the other legal issues raised by this contested matter, is a consideration of the nature and effect of the Tax Sale process under Connecticut law.

**A. Connecticut Tax Sale Procedures**

Connecticut state law grants municipalities and their tax collectors extraordinary remedies to assist in the collection of vital local property tax revenue. Connecticut law gives municipal tax collectors three property execution options, as follows:

> If any person fails to pay any tax, the collector or his duly appointed agent shall make personal demand of him therefor or leave written demand at his usual place of abode or deposit in some post office a written demand for such tax, postage prepaid, addressed to such person at his last-known place of residence . . . . After demand has been made in the manner provided in this section, the collector may [i] levy for such tax on any goods and chattels of such person and post and sell them in the manner provided in case of executions, he may [ii] enforce by levy and sale any lien upon real estate for such taxes or he may [iii] ***levy upon and sell such interest of such person in any real estate as exists at the***

> ***date of the levy.***

C.G.S. § 12-155 (2006) (emphasis supplied).  In this case, the Collector declined to exercise her lien rights, *inter alia*, and instead opted to levy and sell the Ward Property in order to collect the Delinquent Real Estate Taxes.  The contours of Connecticut tax sale procedure are set out in detail at C.G.S. § 12-157, in relevant part as follows:

> (a) ***When a collector levies one or more tax warrants on real estate, he shall prepare notices thereof, containing the name of the taxpayer, a legal description of the real property, including the street address, upon which taxes are due, the amount of the tax or taxes due***, including any interest and charges attributable to the property as of the last day of the month immediately preceding the notice, a statement that additional taxes, interest, fees and other charges authorized by law accruing after the last of the month immediately preceding the notice will be added to the amount indicated as due and owing in the notice, ***and the time and place of sale***.  The collector shall post one notice on a signpost in the town where such real estate is situated, if any, or at some other exterior place near the office of the town clerk, which is nearest thereto; one shall be filed in the town clerk's office of such town and such ***town clerk shall record and index the same as a part of the land records of such town***, and ***one shall be sent by certified mail, return receipt requested, to the taxpayer and each mortgage[e], lienholder and other record encumbrancer of record*** whose interest will be affected by the sale.  ***Such posting, filing and mailing . . . shall constitute a legal levy of such warrant or warrants upon the real estate referred to in the notice*** . . . .
>
> \* \* \* \*
>
> (c) At the time and place stated in such notices . . . ***such collector . . . may sell at public auction to the highest bidder all of said real property, to pay the taxes with the interest, fees and other charges allowed by law*** . . . .
>
> \* \* \* \*
>
> (e) Within two weeks after such sale, the ***collector shall execute a deed thereof to the purchaser . . . and shall lodge the same in the office of the town clerk of such town, where it shall remain unrecorded six months from the date of such sale***.
>
> (f) Within sixty days after such sale, the collector shall cause to be published in a newspaper having a daily general circulation in the town in which the real property is located, and shall send by certified mail, return

receipt requested, to the delinquent taxpayer and each mortgagee, lienholder and other record encumbrancer whose interest in such property is affected by such sale, a notice stating the date of the sale, the name and address of the purchaser, the amount the purchaser paid for the property and the date the redemption period will expire. ***The notice shall include a statement that if redemption does not take place by the date stated and in the manner provided by law, the delinquent taxpayer, and all mortgagees, lienholders and other record encumbrancers who have received actual or constructive notice of such sale as provided by law, that their respective titles, mortgages, liens and other encumbrances in such property shall be extinguished. Not later than six months after the date of the sale . . . if the delinquent taxpayer, mortgagee, lienholder or other record encumbrancer whose interest in the property will be affected by such sale, pays or tenders to the collector, the amount of taxes, interest and charges which were due and owing at the time of the sale together with interest on the total purchase price paid by the purchaser at the rate of eighteen per cent per annum from the date of such sale, such deed, executed pursuant to subsection (e) of this section, shall be delivered to the collector by the town clerk for cancellation*** and the collector shall provide a certificate of satisfaction to the person paying or tendering the money who, if not the person whose primary duty it was to pay the tax or taxes, shall have a claim against the person whose primary duty it was to pay such tax or taxes for the amount so paid, and may add the same to any claim for which he has security upon the property sold, provided the certificate of satisfaction is recorded on the land records but the interests of other persons in the property shall not be affected. ***Within ten days of receipt of such amounts in redemption of the levied property, the collector shall notify the purchaser by certified mail, return receipt requested, that the property has been redeemed and shall tender such payment . . . to the purchaser.   If the purchase money and interest are not paid within such redemption period, the deed shall be recorded and have full effect***.

\* \* \* \*

C.G.S. § 12-157 (2006) (emphasis supplied).

**B.  The City as the Holder of a Claim**

The statutory scheme of Connecticut tax sales makes clear that the City is not, and was not at any time during the pendency of this bankruptcy case, the holder of a "claim"

-6-

with respect to the Delinquent Real Estate Taxes. Under the terms of C.G.S. § 157(c) the City's real estate tax claim was satisfied, well before the Petition Date, through its receipt of the proceeds of the Tax Sale. Any funds that might thereafter be paid to redeem the Ward Property will ultimately compensate the Buyer, not the City. See C.G.S. § 157(f) (2006). Accordingly, because the Debtor's Plan impermissibly attempts to treat a non-existent claim, confirmation of the Debtor's Plan must be denied.

Although the Court's conclusion that the City possesses no claim for real estate taxes in this bankruptcy case is dispositive of the narrow question before the Court – the confirmability of the Debtor's Plan – it is nonetheless apparent to the Court that despite the Debtor's Plan's nominal treatment of a "secured claim", what the Debtor is actually attempting to accomplish is payment through the Plan of the amount required under Connecticut law to redeem his ownership interest in the Ward Property. Given that objective, and the possibility that the Debtor may attempt to place the ultimate issues involved in this case back before this Court in the context of a modified Chapter 13 plan, the Court will discuss, below, whether the Debtor in fact possesses redemption rights with respect to the Ward Property. That question turns on the nature of the property interests held by the Debtor and/or his bankruptcy estate at critical points in time.

**C. The Nature of the Subject Property Interests.**

The commencement of a Chapter 13 bankruptcy case creates an estate, the constituents of which are delineated in Code Section 541(a). The estate includes, principally, "all legal or equitable interests of the debtor in property as of the commencement of the case", *i.e.* the Petition Date, see Section 541(a)(1). Thus the initial

question is what, if any, interest the Debtor held in the Ward Property on the Petition Date?

Ultimately, state law informs the nature and extent of a debtor's petition date interest in real property such as that involved in this case. See Butner v. United States, 440 U.S. 48 (1979). It is undisputed that prior to the Tax Sale the Debtor held a fee simple ownership interest in the Ward Property. However, it is alleged that the Tax Sale altered the Debtor's interest in that property. Consequently, this Court must examine Connecticut law in order to determine whether, and in what manner, the Debtor's interest in the Ward Property was altered by the Tax Sale.

This Court concludes that through the Tax Sale process, as set forth in C.G.S. § 12-157, supra, the Debtor lost his fee simple interest in the Ward Property prior to the Petition Date, subject only to his right to redeem. Following a tax sale auction under C.G.S. § 12-157(c), and in consideration of the high bidder's payment of the auction purchase price, a tax collector conveys the entirety of the delinquent taxpayer's interest in the subject property to the purchaser by deed, C.G.S. § 12-157(e). The deed is subject to cancellation, but *only* if the subject property is timely redeemed through payment of the amounts required by C.G.S. § 12-157(f). Accordingly, although the Tax Sale did not deprive the Debtor of *all* right and interest in the Ward Property, it did strip him of his fee simple interest, and left him, as of the Petition Date, holding a bare redemption interest. Accordingly, the Debtor's bankruptcy estate inherited only a redemption interest in the Ward Property.[4]

---

[4] The Debtor's briefing in this matter suggests that his previous fee simple property interest may be recoverable under Code Sections 548 and 550 as having been having been transferred without receipt of reasonably equivalent value. This question is premature for this Court to consider as there has been no Complaint filed.

**D. The Continuity of the Redemption Interest in Bankruptcy.**

The City argues that even though the Debtor held a redemption interest in the Ward Property on the Petition Date, that interest was forfeited during the pendency of this case. The City's argument springs from its interpretation of Bankruptcy Code Section 108(b), which provides in relevant part as follows:

> . . . if applicable nonbankruptcy law . . . fixes a period within which the debtor . . . may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure or perform, as the case may be, before the later of–
>
> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
>
> (2) 60 days after the order for relief.

11 U.S.C. § 108(b) (2006). While the City concedes that the Debtor's redemption period under state law was tolled and extended by virtue of Section 108(b), it posits that the extension provided by Section 108(b) expired 60 days after the Petition Date, *i.e.* not later than September 24, 2006. The Court concurs with the City's interpretation of Section 108(b).

Section 108(b) is not an unusually complex provision of the Bankruptcy Code. There is no doubt that its language – describing the actions that are tolled by that Section – is broad enough to embrace the payment or tender of funds required to redeem a property from a tax sale under Connecticut law. Thus under the plain language of Section 108(b), the Debtor had only 60 days after the Petition Date to pay/tender the redemption amount to the Collector.

Further, as a constituent part of Chapter 1 of the Bankruptcy Code, Section 108(b) is applicable to cases under Chapter 13. While the plan formulation and confirmation provisions of Chapter 13 permit debtors some flexibility in reorganizing their financial affairs including, most notably, the ability to modify certain "claims", none of those provisions contain language excluding debtors with *tax sale* redemption rights from the operation of Section 108(b). Likewise, if Congress had intended to permit Chapter 13 Debtors to utilize wage-earner plans to modify the impact of Section 108(b) *with respect to tax sale redemptions*, it could easily have provided that relief by drafting specific provisions in Chapter 13, as it arguably has done for *lien foreclosure* defaults through Section 1322(c)(1).[5]

The Debtor fails to state what, if any, specific action he took during the bankruptcy case that (i) constituted a tax sale redemption or (ii) *indefinitely* tolled the running of such redemption rights. Perhaps the Debtor believes that the mere act of filing his bankruptcy petition – through the operation of the automatic stay of Code Section 362(a) or otherwise – served to indefinitely toll the redemption period. The fallacy of such an argument is readily apparent. If indeed the automatic stay of Section 362(a), or some other provision or principle of the Bankruptcy Code, tolled the state-law redemption period here, then to that extent Section 108(b) would be superfluous to the federal statutory scheme. Not surprisingly, such reasoning has been rejected by the courts that have considered it. See,

---

[5] The Debtor's argument that this Court's decision in *In re Pellegrino*, 284 B.R. 326 (Bankr. D.Conn. 2002) should supply the rule of decision in this case is without merit. *Pellegrino* refused to apply Section 108(b) to limit redemption rights in a mortgage foreclosure context, where the specific provisions of Section 1322(c)(1) controlled the timing of redemption. By contrast, the instant case does not implicate Section 1322(c)(1) because no mortgage or other lien rights are involved. Rather, the redemption rights involved here are unique to a Connecticut tax *sale* because the Collector consciously declined to pursue any lien foreclosure rights she may have possessed.

e.g., In re Canney, 284 F.3d 362, 372-73 (2d. Cir. 2002). Section 362(a) constitutes a stay of *creditor activity*, not *debtor opportunity*. The latter is specifically addressed by Section 108(b), which controls over any more general provisions of the Bankruptcy Code.

It is also possible the Debtor believes that for purposes of Section 108(b), the filing of his Chapter 13 plan constitutes an act of redemption. This argument, too, is flawed. On its face, the Debtor's Plan neither alludes to, nor claims to be an act of, redemption. Instead, it seeks merely to treat a "Real estate Tax lien" allegedly held by the City. Moreover, treating the filing of the Debtor's Plan as an act of redemption has a more fundamental infirmity. Under the strict terms of Section 108(b), only the "trustee" (*i.e.* the Chapter 13 Trustee) may exercise the rights tolled thereunder. While a Chapter 13 Debtor can exercise *some* bankruptcy administrative powers exclusive of the Chapter 13 Trustee, see 11 U.S.C. §§ 1303 and 1304, none of those powers encompass the exercise of the redemption rights that are the subject of the instant contested matter.

## V. CONCLUSION

For the foregoing reasons, the Court concludes that the City of Waterbury does not hold a secured claim against the Debtor, and hence the Debtor's Chapter 13 Plan's proposed treatment of such a claim is improper. Accordingly confirmation of the Debtor's Plan must be **DENIED**. A separate order effecting this disposition shall enter this day.

Dated: October 21, 2008                                                                                   BY THE COURT

Albert S. Dabrowski
Chief United States Bankruptcy Judge